UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER JOHNSON                         CIVIL ACTION

versus                                       NO. 11-2389

N. BURL CAIN, WARDEN                         SECTION: "R" (1)

# REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Christopher Johnson, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On January 19, 2010, he was convicted of armed robbery under

Louisiana law.¹ On January 29, 2010, he pleaded guilty to being a second offender and was sentenced as such to a term of fifty years imprisonment without benefit of parole, probation, or suspension of sentence.² On January 25, 2011, the Louisiana Fifth Circuit Court of Appeal affirmed that conviction and sentence.³ His related writ application was then denied by the Louisiana Supreme Court on June 17, 2011.⁴

On September 19, 2011, petitioner filed the instant federal application for *habeas corpus* relief.⁵ The state concedes that the federal application is timely and that petitioner exhausted his remedies in the state courts.⁶

## I. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

---

¹ State Rec., Vol. II of IV, transcript of January 19, 2010, p. 95; State Rec., Vol. I of IV, minute entry dated January 19, 2010; State Rec., Vol. I of IV, jury verdict form.

² State Rec., Vol. II of IV, transcript of January 29, 2010; State Rec., Vol. I of IV, minute entry dated January 29, 2010; State Rec., Vol. I of IV, guilty plea form.

³ State v. Johnson, 60 So.3d 653 (La. App. 5th Cir. 2011) (No. 10-KA-612); State Rec., Vol. IV of IV.

⁴ State v. Johnson, 63 So.3d 1038 (La. 2011) (No. 2011-KO-0316); State Rec., Vol. III of IV.

⁵ Rec. Doc. 1.

⁶ Rec. Doc. 9, pp. 2-4.

'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme

>     Court and nevertheless arrives at a result different from [United
>     States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), cert. denied, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

## II. Facts

The facts of the underlying crime are not relevant to the claim asserted in this federal application, and, therefore, they need not be recounted herein. However, the Court notes that they are summarized in State v. Johnson, 60 So.3d 653 (La. App. 5th Cir. 2011).

## III. Petitioner's Claim

Petitioner claims that his rights were violated when he was brought to trial without a finding that he was competent. On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that claim, holding:

> Defendant's sole assignment of error is that the trial court erred in proceeding to trial without determining defendant was competent to do so. The record shows the trial court expressly found defendant competent to proceed to trial. Thus, it appears defendant is arguing that the trial court erred in finding defendant competent.

On January 19, 2010, defendant appeared in court for trial. After some initial matters, defense counsel called defendant to the witness stand. Defense counsel asked defendant if he recalled the terms of a plea bargain offered by the State. Apparently, the State offered defendant a plea bargain whereby defendant would receive a sentence of 40 years for armed robbery and then an enhanced sentence of 49 1/2 years as a second felony offender in exchange for his guilty plea. The defendant recalled the terms of the plea bargain, but stated he did not want to take it. The jury was then brought into the courtroom.

As the trial was getting ready to begin, defense counsel requested a bench conference. She informed the trial judge that defendant just advised her that he was not going to sit through the trial. She also indicated that she was concerned for her personal safety. The jury was removed from the courtroom.

The court then explored the matter with defendant. Defendant responded, "I'm not going to sit through another trial ... I might f*ck around and run over there and punch the f*ck out that D.A. That's what I might do." Defendant continued, "You're going to see. All you have to do is tase me or gas me. I'm already on extended. I'm already locked up. I don't give a f*ck what you all do. You all are going to see. Go ahead and start the trial." Defendant was then shackled and restrained in his seat.

Thereafter, the following exchange took place:

> THE COURT: All right, you all are done? Mr. Johnson, your behavior thus far is not helping your case. I'm getting ready to call the jury in. Do you understand that? Sir, do you understand that?
>
> MR. JOHNSON: No, I don't.
>
> THE COURT: You don't understand that?
>
> MR. JOHNSON: I don't understand nothing. I ain't capable of understanding.
>
> THE COURT: All right. You know fully what –

> MR. JOHNSON: When they come in, I'm going to take to them all through the trial. You'll have to gag me and everything else.
>
> THE COURT: You understand that what you're doing right now is not beneficial to your case and that this Court, if you cannot control yourself will gag you, or if you continue, we will remove you from the courtroom. Do you understand that? We will have the trial without you. Do you understand that?
>
> MR. JOHNSON: That's what I want. I don't want to be in here for trial. Do the trial without me.
>
> THE COURT: Well, right now –
>
> MR. JOHNSON: 'Cause I won't be in here.
>
> THE COURT: – you're going to be here. Right now you're going to be here and you're going to be ordered to remain quiet and to assist your counsel. Do you understand that?
>
> (NO RESPONSE)

Subsequently, "out of an abundance of caution," the prosecutor asked the trial court to offer its views concerning the defendant's statement that he did not understand the proceedings. The trial court responded:

> It is my belief based upon his presence before the court at least during the last year and having sat through a previous trial with Mr. Johnson, that he is competent. He does understand the proceedings before him and that his claim now of incompetence, while made after a fairly aggressive morning, are only coming to delay this trial as is his behavior.
> I find that he is competent. I find that he does understand the things presented to him. However, is anybody concerned about his competence?

The prosecutor replied, "[a]bsolutely not.... It is abundantly clear to me that the defendant is attempting in any way possible to retard the progress of this prosecution." Defense counsel did not respond to the trial court's inquiry. (R., p. 264).

The trial continued. After the jury was selected, defense counsel requested a bench conference where the following colloquy took place:

> DEFENSE COUNSEL: Your Honor, based on the defendant's behavior this morning, the defendant telling me – making the comment that he doesn't really understand everything that's going on; he's high on drugs or whatever –
>
> THE COURT: He's high on drugs? Is that what – I'm asking for a clarification.
>
> DEFENSE COUNSEL: I don't know. I don't know.
>
> THE COURT: Is that what his statement to you was; that he's high on drugs right now?
>
> DEFENSE COUNSEL: Yes.

Defense counsel then requested that defendant be drug tested. The trial judge refused again stating that she did not believe defendant was incompetent. She noted that defendant had been well behaved during jury selection. The trial court further stated:

> I've observed him through the last trial. I observed him on court on numerous occasions. I have observed him this morning. Nothing in his behavior indicates to me that he is in any way incompetent or that he is under the influence of any type of narcotic that would impair his mental capacities.
>
> His outburst this morning, and apparently his comments this afternoon are in line with the dilatory – with delaying this trial, than they have to do with anything else. He is sitting there rationally.
>
> And as I said earlier, I commented to my staff how impressed I was with his behavior during the

> selection of the jury. He acted appropriately. He was not disruptive. He did not have any outbursts. He has been incarcerated for quite some time continuously and has been under the supervision of JPSO or the Department of Corrections for at least the past year and he has been handcuffed and shackled at this point within this court for at least the last four hours. Therefore, the opportunity for him to be under any type of narcotic seems to have severely diminished.
> Therefore, I am not going to drug test him.
>
> * * *
>
> In terms of his behavior. He is under control right now. He is behaving himself. And again, I am looking at him. He appears just as he has on any other day before this court; competent and able to proceed.

Defense counsel objected to the trial court's ruling and trial proceeded. There was no further mention of the defendant's capacity to proceed.

A criminal defendant has a constitutional right not to be tried while legally incompetent. State v. Carmouche, 01-0405, p. 29 (La. 05/14/02), 872 So.2d 1020, 1041. There is a legal presumption that a defendant is sane and competent to proceed. The legal presumption that a defendant is sane and responsible for his actions may be destroyed by rebutting evidence. Id.; La. R.S. 15:432.

La.C.Cr.P. art. 641 provides that "[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." The two-fold test of capacity to stand trial is whether the defendant: (1) understands the consequences of the proceedings, and (2) has the ability to assist in his defense by consultation with counsel. State v. Bridgewater, 00-1529, pp. 13-14, (La. 1/15/02), 823 So.2d 877, 892, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003).

The mental incapacity of the defendant to proceed may be raised at any time by the defense, the district attorney, or the court. La.C.Cr.P. art. 642; State v. Williams, 03-942, p. 6 (La.App. 5 Cir. 1/27/04), 866 So.2d 1003, 1008, writ denied, 04-450 (La. 6/25/04), 876 So.2d 832. Any question regarding a defendant's mental

capacity must be deemed by the court to be bona fide and in good faith before the court considers if there are reasonable grounds to doubt capacity. State ex rel. Seals v. State, 00-2738, p. 6 (La. 10/25/02), 831 So.2d 828, 833. Reasonable ground in this context refers to information which, objectively considered, should reasonably raise a doubt about the defendant's competency and alert the court to the possibility that the defendant can neither understand the proceedings, appreciate the significance of the proceedings, nor rationally aid his attorney in his defense. State v. Anderson, 2006–2987, p. 21 (La. 9/9/08), 996 So.2d 973, 992, cert. denied, ––– U.S. –––, 129 S.Ct. 1906, 173 L.Ed.2d 1057 (2009).

The trial court has discretion in deciding whether to order a sanity commission to inquire into the defendant's present mental capacity to proceed. The appointment of a sanity commission is not a perfunctory matter, a ministerial duty of a trial court, or a matter of right. Carmouche, 01-0405 at 30, 872 So.2d at 1041-42. The Louisiana Supreme Court has explained that, "[a] trial judge is only required to order a mental examination of a defendant when there are reasonable grounds to doubt the defendant's mental capacity to proceed." Seals, 00-2738 at 5, 831 So.2d at 832.

A trial court's determination on a defendant's mental capacity to proceed is entitled to great weight on appellate review, and will not be overturned absent an abuse of that discretion. State v. Fish, 99-1280, p. 4 (La.App. 5 Cir. 4/12/00), 759 So.2d 937, 939.

In State v. Bridgewater, *supra*, the defense moved several times to have the trial court appoint a sanity commission. Although the defense expressed concern about the defendant's competency to proceed, the attorneys' main concern was that they could not communicate with the defendant because he was uncooperative, violent, and irrational, and disagreed with their trial strategies. The defense offered no medical evidence suggesting the defendant was incompetent. The trial judge denied the motions because the defendant was found competent a year earlier in an unrelated case, and because the trial judge had personally observed that the defendant exhibited a good understanding of his current circumstances and had a good handle on legal concepts.

On appeal, the defendant argued that the trial judge erred by refusing to appoint a sanity commission. The Louisiana Supreme Court held that the trial judge did not abuse his great discretion in declining to appoint a sanity commission under the circumstances of the case. The supreme court stated that, even assuming there was no prior evaluation in an earlier, unrelated case finding defendant

competent to proceed, the trial judge was entitled to base his ultimate decision on his extensive prior dealings with the defendant. The supreme court noted that, although two defense attorneys voiced concern over the defendant's behavior, those objections, standing alone, did not persuade them that the trial judge should have appointed a sanity commission. In sum, the supreme court concluded that, given the presumption of sanity and the trial judge's numerous chances to observe defendant personally, defendant failed to demonstrate the trial judge abused his discretion in denying the numerous motions for the appointment of a sanity commission. Bridgewater, 00-1529 at 16, 823 So.2d at 893.

In the present case, the trial judge had personally observed defendant over the course of several criminal proceedings. Two months before the proceeding at issue, the trial judge had presided over a two-day trial in which defendant was charged with and convicted of simple robbery. In the present case, there were several pre-trial hearings where defendant was present and the trial judge had the opportunity to observe defendant's demeanor. Immediately prior to trial, defendant acknowledged the State's prior offer of a plea bargain and clearly stated that he had no interest in the plea bargain. Additionally, defendant presented no medical evidence to indicate he was incompetent.

Defendant's actions showed complete disrespect for the court and the trial court proceedings and appear to have been nothing more than a manipulative attempt to delay the trial. We find defendant's behavior did not provide reasonable grounds to doubt his mental capacity to proceed. Considering the presumption of sanity, the trial judge's numerous opportunities to personally observe defendant, the lack of medical evidence suggesting defendant was incompetent, and defendant's prior experience with the legal system, we do not find the trial judge abused her discretion in determining defendant was legally competent to proceed to trial.[7]

---

[7] State v. Johnson, 60 So.3d 653, 655-59 (La. App. 5th Cir. 2011) (No. 10-KA-612); State Rec., Vol. IV of IV.

The United States Fifth Circuit Court of Appeals has explained:

> Constitutional due process requires that the trial of an accused may be conducted only when they are legally competent. See Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). A court must *sua sponte* conduct an inquiry into a defendant's mental capacity if the evidence raises a *bona fide doubt* as to the defendant's competency. See Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); see also Lokos v. Capps, 625 F.2d 1258 (5th Cir. 1980). In considering whether a hearing should have been conducted into the defendant's mental status, "[t]he question is: Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense." Id. at 1261. The test to determine whether a Pate procedural violation has occurred is an objective one based on what was known to the trial court at the time of the trial. Id. (citation omitted). The Supreme Court has not articulated a precise standard for what should indicate a bona fide doubt, but generally the Court focuses on three factors that should be considered: (1) the existence of a history of irrational behavior, (2) defendant's demeanor at trial, and (3) a prior medical opinion. See e.g., Drope, 420 U.S. at 180, 95 S.Ct. 896. Even one of these factors, standing alone, may be sufficient to signal a constitutional violation. Id.

Mathis v. Dretke, 124 Fed. App'x 865, 875 (5th Cir. 2005). "The habeas petitioner carries the burden of showing that a Pate violation occurred by making a clear and convincing showing of the existence of a real, substantial and legitimate doubt as to his mental capacity." Wheat v. Thigpin, 793 F.2d 621, 629 (5th Cir. 1986) (quotation marks and brackets omitted).

In the instant case, petitioner has utterly failed to meet his burden of proof. He has not established that any colorable doubt, much less the required "real, substantial and legitimate doubt," existed as to his competency. He points to no history of irrational behavior. He supplies no prior medical opinion of incompetency. To the extent that he is claiming that he was under the

influence of alcohol or drugs, he has presented no evidence to explain how he came in contact with such substances given his custodial status. Further, the trial judge, who, of course, was in the best position to assess the circumstances, found that petitioner's overall demeanor indicated that he was competent and that his few outbursts stemmed more from a desire to delay the proceedings than from any mental incapacity. A competency hearing simply is not required where, as here, there is no evidence of actual incompetency and the circumstances overwhelmingly indicate that a defendant is only trying to delay the proceedings. See, e.g., United States v. Benabe, 436 Fed. App'x 639, 649-50 (7th Cir. 2011), cert.denied, 132 S.Ct. 1612 (2012); United States v. Campas, 105 Fed. App'x 264, 267-68 (10th Cir. 2004). Therefore, under the stringently deferential standards of review mandated by the AEDPA, this claim should be rejected.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Christopher Johnson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[8]

New Orleans, Louisiana, this nineteenth day of June, 2012.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[8] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.